Brent Electric Company v. International Brotherhood of Electrical Workers. It is docket 23-5108, and counsel, we are ready for you and you're ready for us. Thank you, Your Honor. May it please the Court, my name is Mark Hutt, and I'm here representing the appellant in this case, Brent Electric, and I intend to reserve a few minutes for rebuttal if that happens. There is a first principle in arbitration that is strictly a matter of consent. That means that if a party does not consent to arbitration, they can't be forced to arbitrate a matter. What if they do consent? What's that? What if they do consent? If they do consent, then they have to arbitrate the matter. It is a matter of consent. Well, in this case, didn't the language of the memorandum of understanding find its way into the regular, the big agreement, prior to the execution of the newest agreement? Well, we have maintained, Your Honor, that the memorandum of understanding is a separate agreement. I know, but how do you get around the language that was in court, that was in the, I forget, the 2018 agreement? Yeah, well, the question of whether or not there was consent to arbitrate this matter is really a question that arises under the collective bargaining agreement, and the language is contained in there. That is under clause section 1.02d, and that is the section that provides the issues that can be provided to arbitration in this case. So that's what I'm focusing on, Your Honor, is the language where it says that these particular matters can be submitted by the parties to arbitration, and it has a definition there. That's what I am saying, that's what I'm pointing to as the focal point for what the parties do consent or did consent to submit to arbitration. Now, the addendum 4, that's a separate matter, and we maintained that addendum 4 is a separate agreement to which my party, Brent Electric, was not a signatory. Brent Electric did not sign that addendum 4. No, but it says in that original deal that it shall apply to all firms who sign a letter of consent to be bound by the terms of this agreement, and didn't that happen? Well, Brent Electric did sign a letter of consent to be bound. And didn't the agent, or whatever you want to call it, put that language right into the agreement? The letter of consent had to do with the joint bargaining that was provided by NECA. Right. And it did consent initially to having joint negotiations through NECA and having NECA represent it with the union.  So, again, getting back to the question of if that clarifies what you're asking. Well, I'm not sure it does because it was done years before this memorandum of understanding. Yes, and that addendum 4... It didn't apply until they did revoke it. The addendum 4 was in place with three parties. It was in place with the union, it was in place with OESCO, it was in place with NECA, but my client, our client, Brent Electric, never signed that agreement. When was that agreement, and when did he say, I'm not going to sign it? They did not say they're not going to sign it. They just did not sign it, Your Honor. The addendum 4, we maintain, is a separate agreement. It is not a part of the collective bargaining agreement, and it's a standalone agreement. And what has happened is the district court here basically inserted the Brent Electric into this memorandum 4, this addendum 4, instead of OESCO. It did that in its decision and made it an unwilling participant to addendum 4. Well, it made a factual determination, certainly against you on that, but if we agree or we find that wasn't clearly erroneous, you lose on that issue. As far as addendum 4, it's just part of the contract. Then addendum 4, if you say that, yes, there was a set that was given and that it was somehow incorporated into the collective bargaining agreement, then yes, on that we do. And that is what the district court did make that factual finding. Right, then it would be a part of the collective bargaining agreement if that was a case that was incorporated. Well, the MOU that NECA signed in 2012 and modified in 2018 was binding on Brent Electric during the entire 2018 collective bargaining agreement, was it not? Well, then yes. If it was an agreement that was adopted by Brent Electric, then sure. No, not adopted. They agreed to be bound by it by the letter of assent. Again, that letter of assent was revoked in 2020. Yeah, I know, but it was already there prior to 2020. Yes. So if the addendum 4 is in place, then it would be bound by the 10 of the terms of addendum 4. However, those do not govern what is going to be submitted to arbitration under the terms of the collective bargaining agreement. Well, but you have in the 2018 agreement, my understanding of what this is all about is the interest arbitration provision that basically said unilateral submission of all disputes when you negotiate a new successor agreement. You're bound to that. That was a 2018 collective bargaining agreement. You were represented by NECA. You're bound by that. So I'm struggling, and the district court interpreted the word all to mean all. It said it's unambiguous. It includes both permissive and mandatory provisions. I mean, that's what we're talking about here, right? Yes, Your Honor. And how do you contract? You were contractually obligated to follow that, at least for the 2021 collective bargaining agreement. That is true. Not beyond that. It's not a successor type. It doesn't continue on. That's a different matter. You are correct, Your Honor. But we state that the language that is in that section that gives consent to arbitration is ambiguous. How? Because it states, unresolved issues and disputes arising out of failure to negotiate a renewal or modification of this agreement. We say that that doesn't include permissive subjects of bargaining. There is a well-defined public policy that says that the only way that my client, Brent Electric, can waive its rights to permissive subjects not being a part of the arbitration is if it does that knowingly, it does that unmistakably, and it does that explicitly. And our client didn't do that here. There's also a Second Circuit case that is in complete agreement with what we're saying here, that these permissive subjects of bargaining fall outside of that definition of what can be arbitrated as it relates to Brent Electric. It's a minority view, though, is it not? The Second Circuit says it, and I believe that it is a minority view on that issue, but it is an ambiguity. And here, the court and the union, by their arguments, make that argument stronger. In the district court below, they made the argument, and the district court found that, yes, the language is unambiguous. It is clear. However, it does exclude one permissive subject of bargaining, and that is a second-generation interest arbitration provision. Now, when you say public policy, you also say statutory rights, right? Yes. The NLRA supports you in that. What provision of the NLRA are you talking about? I was referring to Section 8A-5, Section 8B-3, and 8D of the NLRA. One more time? They were 8A-5, 8B-3, and 8D. 8D as in dog? Yes. And those specifically provide that when bargaining is going on for a collective bargaining agreement, that a party has a statutory right not to agree to permissive subjects of bargaining. In fact, that's so ingrained in the system that if, during negotiations, a party insists on negotiating about permissive subjects, they have committed an unfair, that's bad faith bargaining. Of course you have that right, but you also can negotiate away that right, which is what happened here. Well, you can't agree that permissive subjects be included in the arbitration provision. What's your what's called forceful evidence of intent as far as that somehow the terms unresolved issues of disputes with respect to the successor agreement doesn't include all unresolved issues and disputes? What is your forceful evidence of intent? The argument for that, Your Honor, is that the only way that you can waive the statutory right, this public policy that exists, that Brent Electric could do that, and those permissive subjects that I have been talking about be included in that definition of the arbitration provision if it's through a clear and unmistakable waiver. The Supreme Court has said that. If that is a statutory right, that is a public policy. And what's not clear and unmistakable when you've agreed to negotiate all unresolved disputes? What's not clear about that? Well, the thing that's not clear about it, Your Honor, is if it says unresolved issues and disputes, and that always sweeps in permissive subjects of bargaining, then there's no right that's being given. There's a right that's being taken away that there be a clear and unmistakable waiver. For that next successor agreement, yes. Beyond that, no. Unless you agree. You didn't agree to it, correct, in the 2021 collective bargaining agreement. There was no such provision. In 2021, they submitted some claims. They submitted some issues to the CIR, the Council on Industrial Relations. We, from the beginning, objected to the submission of those permissive subjects of bargaining to the CIR. And we've always said that those permissive subjects of bargaining should not have been before the CIR. But did the 2021 agreement contain this same clause, this interest arbitration clause, regarding successor agreements? The 2021 agreement does not contain... Right, because you have the ability not to agree to that. So if there is another agreement or a successor agreement, that would not go to interest arbitration. Right, right. But our position is that that language is ambiguous. And then what? What if it is ambiguous? If it is ambiguous, we say, then you have to go or you have to start with it. You have to start with this statutory, this public policy exception that applies to permissive subjects of bargaining. Does it resolve in favor of the union or not? Is there a principle that says it does? What's... Ambiguous language in it. Yes, in the district court, the district court did find that it was not ambiguous, that it was clear not ambiguous. But if it is ambiguous, is there a principle of law in this setting, obviously this labor setting, that you interpret in favor of the union? Well, if it's ambiguous, then you have to look to other sources to determine if, in fact, a permissive subject of bargaining was meant to be part of the consent that was provided for the arbitration. Well, the district court said there was a presumption of arbitrability. If it's ambiguous, the presumption applies. Yes. That's the first thing that it said. And we say that that analysis should not apply here because we have a well-defined public policy. And that well-defined public policy is that permissive subjects of bargaining cannot be forced upon an employer. Well, are you saying that you flat cannot include permissive items to be bargained if you want to? Yes, you can if that's in front of an employer and a company. And isn't that the main issue here, whether or not those permissive items are included as a result of the assent letter and the inclusion of the language from the – was it Onesco memorandum? Well, it's our position that the only way the permissive subjects can be included as part of the arbitration is if they agree, the parties agree. Both the union and the company agree that permissive subjects will also be submitted to interest arbitration. Okay. And isn't that the issue is whether there was such agreement given the assent and the NECA inclusion of those items in the collective bargaining agreement? We say it's a question of whether or not the particular language in the CEA – Okay. I'm just going to point out what it is that we're looking at. That was agreed to by NECA is, in fact, broad enough to encompass permissive subjects. Okay. And we're saying that it is not because there is this trumping well-known public policy that says permissive subjects should not be submitted unless they're specifically agreed to at the front end. If the parties agree that permissive subjects should apply and can go to arbitration, then that's fine. Then they go to arbitration. That's our position. Thank you. The circuit courts on this are overwhelming in their support for our position on this. We cite to those. Don't a number of those cases deal with continuing arbitration interest provisions? Yes. When you sort those out, the string side shrinks considerably, doesn't it? It does go down some because there are some of the cases that do apply this analysis to other permissive subjects and say that these other permissive subjects, besides the interest arbitration, the second generation of interest arbitration provision, those other permissive subjects should not be a part of an arbitration decision.  All right. Thank you, counsel. Good morning, Your Honor. May it please the court. Good morning. My name is Glenda Pittman. I'm appearing on behalf of ABBV, IBW Local 584. From local's perspective, this is a very straightforward contract interpretation and compliance case. Brent Electric made a deal in 2018 by agreeing to the collective bargaining agreement that NECA had negotiated with Local 584 to go to interest arbitration concerning every unresolved bargaining issue in 2021. After the fact, after the horse had left the barn, Brent Electric got some form of buyer's remorse and said, no, we didn't really agree to present to the interest arbitrator, the CIR, permissive subjects and bargaining. There is a body of Supreme Court law involving the Steelworkers' Trilogy from the 1960s, Granite Rock, AT&T and others that say that when you have a disagreement about what the scope of an arbitration agreement is, there is a rubric that you follow for how you determine whether or not the particular dispute really is within the scope of that arbitration clause. And you start by looking at the plain language of the arbitration provision. The district court did that. The district court followed the law that's actually applicable and also followed governing 10th Circuit precedent in the form of the McElroy's case. By the way, McElroy's has been approved of by the NLRB as correctly stating that contractual bargaining obligations and statutory bargaining obligations are separate. They're separately enforceable and contractual obligations are enforceable even if there are no statutory bargaining obligations. That case wasn't factually similar, though, was it, to this? You're asking about McElroy's? Factually somewhat different except that the interest arbitration language was very similar, the extension or the evergreen language provision was very similar, and the defense that the employer raised was exactly the same. We don't have a statutory obligation to bargain, said McElroy's, and the 10th Circuit said, well, no, you don't, but you have a contractual obligation to bargain to present your bargaining issues to the interest arbitration body in that case and to abide by the award and the collective bargaining agreement that's awarded. So I think that the factual differences are insignificant. Was there contractual language like this where they were trying to decide whether terms like unresolved disputes included mandatory and permissive interests? McElroy's did not address the question of – Right, the specific question. Specifically whether the language encompassed permissive subjects of bargaining, no. Instead, the statutory bargaining obligation that the McElroys could address was McElroy's assertion that because it was a Section 8F agreement, they didn't have any statutory obligation to bargain at all and they could simply walk away and not do interest arbitration. And the court, your court, said, well, maybe that's true, but you signed this contract and it's binding. And we have the same statutory kind of defense here. Brent Electric says it had no statutory bargaining obligation to negotiate over permissive subjects. And that should somehow be read into the otherwise pretty clear language of Section 1.02D. The answer is no, it should not be read into it. Granite Rock said don't do that. Brent's waiver argument here has a number of problems, but one of them is that neither side here had a statutory obligation to bargain a successor contract. They were both Section 8F, well, it was a Section 8F bargaining relationship. And as discussed in the brief, Section 8F bargaining parties had an obligation to make no unilateral changes in the terms of the existing contract, but the obligation does not extend to the negotiation of the successor agreement. And the reason for that is really simple. It is unlawful under the National Labor Relations Act for an employer to recognize as the collective bargaining representative a union that does not  Section 8F makes an exception to that, but only concerning the terms of that Section 8F contract, not concerning what has to be or what obligations might exist for a successor. I also want to make the point that the waiver cases that Brent has cited, not a single one of them, talks about applying a clear and unmistakable waiver to determine what the scope of an interest arbitration provision is. There is no body of law that can give you any guidance in that regard. The only applicable body of law here in determining the scope of that provision is the body of law that the Supreme Court has established and that the Tenth Circuit has dutifully followed pretty much every time you've had a case asking you to decide this issue. Now, what's the significance of the letter of assent? The letter of assent is a device that is used by employers who want the employer association to be their bargaining representative. And that was one, that we have one in this case. There was one signed, I believe it was back in the middle 1990s, but I don't think that it's terribly germane in the question of the scope of the interest arbitration language. It simply… Isn't it some way involved in whether the MOU became part of the 2018 collective bargaining agreement? I have to, I believe, redirect your thoughts here. I don't think that the letter of assent that was signed back in the 1990s has much directly to do with whether or not Addendum 4 was part of the 2018 collective bargaining agreement. I want to make a point about Addendum 4 here. The district court found it undisputed that Addendum 4 was part of the 2018 collective bargaining agreement. And the reason it found it undisputed, it found it undisputed under Federal Civil Procedure 56E2, is that the union presented evidence that when negotiating the 2018 collective bargaining agreement, NECA and Local 584 considered Addendum 4 as part of it, and considered NECA and IDW Local 584 to be the only parties to that agreement, to the 2018 agreement. OSCO was not a party to that agreement. Brent Electric did not provide rebuttal evidence, and so the district court found under 56E2 that it's undisputed. If there are no other questions, does anyone want to address mootness? Yes, please. First, I felt compelled to raise mootness because attorneys have a responsibility to the court to raise an issue that might go to their jurisdiction, and I didn't want to be on the wrong side of that responsibility. Well, you have an obligation to do it much sooner than you did, based on your knowledge of when the, under our local rules, I mean. I'm sorry, Your Honor. You have an obligation to file that motion much sooner, and you did know that the, it was expiring, the agreement was expiring. Yes, and we said that in the briefing, as well as in the briefing that Brent Electric was in compliance. And it is true that we could have filed something about mootness earlier, but... Well, why is this, why would it be moot when, I think one of the arguments that they point out is that there's a, that if they were to win, for instance, on the issue of the addendum, the... Addendum 4. Addendum 4, they would be able to seek reimbursement of some amounts paid in for employee benefits. Is that right? Well, I believe that what they, what Brent asserted was that it would be able to seek reimbursement for $750 spent on a surety bond premium since June 1 of 2021. I think there were a couple of reasons. As well as... I want to say there was a $4,000 or $5,000... And that was in contributions to two benefit funds that are, they're called industry funds. They assist the bargaining parties in gaining market share. Right. And why isn't that enough? I mean... Well, there are a couple of reasons. First, surety bonds are... I'm talking about the $4,000 or $4,500 payment. I think it was... They claim over $5,000... Not for that. Not for the bond. I'm talking about... Brent says that they could be entitled to reimbursement from the funds for those. Well, the funds are not parties to this. They don't have to be. They would be entitled to... They don't even have a claim if they don't succeed. They would then have a claim for reimbursement. Right? If they succeed... Let me make sure I understand. You're asking me if Brent succeeded in getting the district court reversed, it would have a claim for reimbursement? Right. If that's what they're arguing, isn't it? I think that Brent's voluntary compliance and voluntary adoption of the agreement pretty much wipes out any claim that they might have. Well, it's at least a question. Would you like a further response? No, I'm... All right. Your motion basically just said it was moot, and you didn't cite any authority. I mean, other than just a... Well, we cited at least two Tenth Circuit decisions. However, we've now raised the mootness issue. It's in your hands. I've discharged my responsibility. And, of course, we will abide by whatever your decision is. Any other questions? Looks like none. Thank you. Thank you both for your arguments. The case is submitted, and counsel are excused.